Jeffrey D. Kaliel (SBN 238293)
Amanda J. Rosenberg (SBN278507)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

Sophia G. Gold (SBN 307971
KALIELGOLD PLLC
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783
sgold@kalielgold.com

JENNINGS PLLC
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (601) 270-0197
chris@jenningspllc.com
tyler@jenningspllc.com
winston@jenningspllc.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>v.<br><br>GO CARWASH MANAGEMENT CORP.,<br><br>        Defendant. | **Civil Action No.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Aaron Rodriguez ("Plaintiff"), individually and on behalf of all others similarly situated., bring this Class Action Complaint against Defendant GO Car Wash Management, Corp. ("Defendant" or "GO"), and makes the following allegations based upon information and belief, except as to allegations specifically

pertaining to Plaintiff, which are based on personal knowledge.

## **NATURE OF THE ACTION**

1.      This class action lawsuit seeks to challenge Defendant's deceptive enrollment of customers into Defendant's automatic renewal payment plan, in violation of Cal. Bus. & Prof. Code § 17600, *et seq*., for Defendant's car wash product (the "Product").

2.      Defendant is a car wash company that operates physical car wash locations across the United States, including in California.

3.      Defendant offers individual car washes and car washes under a membership or subscription model.

4.      Consumers that visit Defendant's physical car wash locations are regularly signed up for car wash memberships when they believed they were only purchasing a single car wash.

5.      Further, even when enrolling customers into the membership program, Defendant fails to clearly and conspicuously disclose that the membership will automatically renew each month.

6.      Defendant systematically violates the California Automatic Renewal Law ("ARL") by failing to present the automatic renewal terms of its membership in a clear and conspicuous manner on its website or in person at its car wash locations at the time members sign up. Moreover, Defendant violates the ARL by failing to disclose clearly and conspicuously how customers can cancel their subscription.

7.      Further, Defendant enrolls consumers in their automatic renewal membership and charges their debit cards, credit cards, or third-party payment accounts without first obtaining consumers' affirmative consent. Defendant also fails to provide an acknowledgment to consumers that properly discloses the automatic renewal terms, cancellation policy, and allows the consumer to cancel before they are charged after their free trial.

8.     In addition to these failures Defendant makes it difficult or impossible to cancel membership on its website or in person, and Defendant fraudulently charges customers, including Plaintiff, after they affirmatively cancel their membership with Defendant.

9.     Plaintiff and other consumers have been deceived by Defendant's actions, and consequently have been deceived into signing up for an automatically renewing payment plan.

10.     Furthermore, Plaintiff and other consumers have been fraudulently charged monthly membership charges even after they affirmatively cancelled their memberships.

11.     Defendant's conduct violated and continues to violate the California Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*; California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and the Electronic Funds Transfer Act ("EFTA"). Defendant is also unjustly enriched by this deceptive scheme.

12.     Accordingly, this is a civil action seeking to put an end to this illegal scheme. Through this class action lawsuit, Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Classes.

## PARTIES

13.     Plaintiff Aaron Rodriguez is a citizen and resident of the State of California.

14.     Defendant GO Car Wash Management Corp. is a Delaware corporation, with its principal place of business at 7400 E Orchard Road, Suite 260S Greenwood Village, Colorado 80111.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action.

16.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business at its physical car wash locations in this district and

throughout California. Defendant also has contacts with California that are so continuous and systematic that they are essentially at home in this state. Defendant regularly conducts and solicits business in California, provides products and services to persons in the State of California, and derive substantial revenue from the same.

17.    Venue is proper in this county because a substantial part of the events or omissions giving rise to Plaintiff's and the Class Members' claims occurred in this district.

## BACKGROUND FACTS

18.    In recent years, there has been an explosion in the number of car washes being opened in the U.S.[1] This explosion has been fueled by the innovation of subscription car wash models—car washes that allow for customers to take advantage of unlimited washes for a monthly fee.[2]

19.    Lured by a new lucrative subscription model, private equity firms poured money into the car wash industry.[3]

20.    GO Car Wash was launched by private equity firm Imperial Capital in 2019.[4]

21.    Defendant operates at least 145 locations in 10 states throughout the United States.[5]

---

[1] Patrick Sisson, *Why Are There Suddenly So Many Car Washes?*, BLOOMBERG (Feb. 21, 2024 at 8:00 AM EST), https://www.bloomberg.com/news/features/2024-02-21/car-washes-are-taking-over-the-us-here-s-why.

[2] *Id*.

[3] *Id*; Obey Matin Manayiti, *Workin' at the car wash: PE firms race to consolidate the sector*, PE HUB (May 26, 2022), https://www.pehub.com/workin-at-the-car-wash-pe-firms-race-to-consolidate-the-sector/.

[4] *Imperial Capital Launches GO Car Wash*, GLOBENEWSWIRE (Feb. 19, 2019 at 7:02 ET), https://www.globenewswire.com/en/news-release/2019/02/19/1734130/0/en/IMPERIAL-CAPITAL-LAUNCHES-GO-CAR-WASH.html.

[5] https://gocarwash.com/go-car-wash-marks-five-year-milestone-with-explosive-growth-to-145-locations/.

COMPLAINT FOR DAMAGES

22.    Customers can purchase a car wash or membership online at GO Car Wash's website (https://gocarwash.com/) or purchase the car wash or membership in person at one of the car wash locations.

23.    If a customer chose to purchase a membership on Defendant's website they would see the following screens:



COMPLAINT FOR DAMAGES







24.     Defendant fails to clearly and conspicuously disclose anywhere throughout this lengthy checkout process that its membership will automatically renew. Nor does Defendant clearly and conspicuously disclose how to cancel its membership at the time of checkout.

25.     Defendant also fails to provide clear and conspicuous disclosure that its memberships will automatically renew at *its physical locations*. Defendant does not clearly and conspicuously disclose to customers at its physical locations how they can cancel their memberships.

26.    Yet, not only does it turn out that the membership must be affirmatively cancelled to prevent it from being automatically renewed each month—a fact most, if not all, consumers are unaware of—the membership is also extraordinarily difficult to cancel.

## I.    California Automatic Renewal Law

27.    The California legislature enacted the California Automatic Renewal Law, Cal. Bus. & Prof. Code, § 17600 *et seq*., "to end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service."

28.    To achieve this goal, the ARL makes it unlawful for any business to, among other things, make an automatic renewal offer or continuous service offer to a customer in this state to do any of the following:

(1)    Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or, in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchase agreement pricing will change upon conclusion of the trial.

(2)    Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3)    Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

(4)    Fail to provide a consumer with a notice, as may be required by subdivision (b), that clearly and conspicuously states all of the following:

(A) That the automatic renewal or continuous service will automatically renew unless the consumer cancels.

(B) The length and any additional terms of the renewal period.
(C) One or more methods by which a consumer can cancel the automatic renewal or continuous service.

(D) If the notice is sent electronically, the notice shall include either a link that directs the consumer to the cancellation process, or another reasonably accessible electronic method that directs the consumer to the cancellation process if no link exists.

(E) Contact information for the business.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

29.    The "automatic renewal offer terms" that must be presented clearly and conspicuously include:

(1)    That the subscription or purchasing agreement will continue until the consumer cancels;

(2)    The description of the cancellation policy that applies to the offer;

(3)    The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

(4)    The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

(5)    The minimum purchase obligation, if any.

*See* Cal. Bus. & Prof. Code § 17601(b)(1)-(5).

30.    A "clear and conspicuous" disclosure in relation to the ARL "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

31.    After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms," and "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(2)-(3). The ARL specifically states that "[i]f the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services." Cal. Bus. & Prof. Code § 17602(a)(3).

32.    The ARL also requires that "[a] business shall provide a consumer with a notice as specified in paragraph (4) of subdivision (a) if …:

(1)    The consumer accepted a free gift or trial, lasting for more than 31 days, that was included in an automatic renewal offer or continuous service offer or the consumer accepted an automatic renewal offer or continuous service offer at a promotional or discounted price, and the applicability of that price was more than 31 days:

(A)The *notice shall be provided at least 3 days before and at most 21 days before the expiration of the predetermined period of time for which the free gift or trial, or promotional or discounted price*, applies.

Cal. Bus. & Prof. Code § 17602(b)(1)(A). (emphasis added).

33.    Further, the method for cancellation must be "cost-effective, timely, and easy-to-use." Cal. Bus. & Prof. Code § 17602(c).

## II.    Defendant's Signup Process

### A.    General Signup Process

34.    Defendant offers a car wash service, where users can sign up for a membership on Defendant's website. The checkout process for the website, as further described above, does not include any clear and conspicuous disclosure that the

membership will automatically renew each month. Further, there is no disclosure of how to cancel the membership on Defendant's website.

35.    However, many customers purchase Defendant's car wash services in person at one of its 145 locations.

36.    Defendant does not clearly and conspicuously disclose to customers that they are signing up for an automatically renewing membership that they must affirmatively cancel or their payment method will be charged without their input each month.

37.    Defendant's signup process occurs either with the assistance of a Defendant employee—who signs the user up for a membership or takes their order for a car wash purchase—or through a touch screen used by the customer.

38.    After the customer is signed up for a car wash or membership, a Defendant employee then attaches a sticker with a bar code to the customer's windshield.

39.    This sticker contains a bar code that can be scanned by the car wash each time the customer uses the automatic car wash. This way customers don't have to check-in or take any further steps whenever they want to get a car wash under their membership.

40.    Defendant fails to clearly and conspicuously disclose the terms of the membership, the cancellation terms, or that the price charged by Defendant is a discount price and that the customer will be charged a higher price after a discount or promotional period.

41.    Upon information and belief, it is Defendant's practice and procedure to train its employees to not disclose the terms of the membership or cancellation policy in order to sign as many customers up for automatically renewing membership as possible.

42.    In addition to its general failure to disclose, Defendant also fails to "provide an acknowledgment that includes the automatic renewal offer terms or

continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer," when they make a purchase or sign up for a membership at a car wash location. *See* Cal. Bus. & Prof. Code § 17602(a)(3).

### B.    Defendant's "Discount" Membership Scheme

43.    Upon information and belief Defendant regularly offers its memberships at "discounted" prices in order to incentivize customers to sign up.

44.    However, Defendant does not disclose that the price quoted to customers is a "discount" price that will increase substantially after a brief discount period (usually one or two months).

45.    The price of Defendant's memberships are usually offered between $19.99 and $34.99 a month.

46.    However, the price quoted to customers for a car wash or membership is only $9.99.

47.    As occurred to Plaintiff, Defendant offers the "discount" price of $9.99 as the actual price of a car wash or membership without disclosing that Defendant will automatically raise that price to $34.99 after a brief discount or promotional trial period.

48.    Plaintiff and customers then suffer unexpected, automatic charges to their accounts of amounts that they did not authorize in violation of Cal. Bus. Bus. & Prof. Code § 17602(a)(1)-(4) & (b).

49.    As described further below, Plaintiff signed up for a Defendant car wash for the price of $9.99, and was never told that this was a promotional price and that he would be automatically charged a higher monthly charge of $34.99 after a promotional period ended. Further, Plaintiff did not authorize these additional charges and was given no notice that the price of the membership would increase, in violation of the ARL.

## III.    GO'S CANCELLATION POLICY AND RELATED MATERIAL MISREPRESENTATIONS AND OMISSIONS

50.    Defendant does not provide a clear and conspicuous disclosure of its cancellation policy or how to cancel its memberships in violation of the ARL.

51.    Thus, customers who sign up for a membership or who find themselves being charged a monthly membership fee without their authorization are left to try to figure out how to cancel the membership.

52.    The only indication Defendant gives about cancelling the membership is in small print on one page of its website, which states, "[c]ancel online or at the wash anytime."

53.    Upon information and belief, Defendant trains and instructs its employees to make the cancellation process as difficult for consumers as possible.

54.    First, Defendant instructs employees to tell customers who request a cancellation that they must cancel online on Defendant's website, even if the customer signed up in-person at a physical location and has never used the website, and was never given instructions on how to cancel online at the time of signup.

55.    Next, in order to cancel on Defendant's website, a customer must navigate Defendant's website, which has no clearly identifiable cancellation method.

56.    Instead, upon information and belief, a customer must go the "manage membership" tab in order to cancel.

57.    Once this first step is completed, a customer is shown the following screen:

///

///

///

///

///

///

COMPLAINT FOR DAMAGES



58.    A customer must then select an option to cancel from a drop-down list, that is not readily apparent on the above screen, under the "I want to" line.

59.    Once a user finally selects cancel their membership on this screen, they must fill in all of the additional information—which the Defendant may not have even collected—and click the "Next" button, which will then submit the cancellation request to Defendant. As shown in the complaints on the BBB below, many customers find it difficult or impossible to use Defendant's website, and many times the website does not allow the user to cancel or does not register their request.

60.    Defendant's cancellation method—which is not disclosed at signup—is not "cost-effective, timely, and easy-to-use," as required by Cal. Bus. & Prof. Code § 17602(c).

61.    However, if a customer simply wants to cancel over the phone or in person at the car wash where they purchased the membership—as is a stated method

on Defendant's website—the Defendant employee will either refuse to cancel the membership or acknowledge that a customer has cancelled the membership. However, even when a Defendant employee has acknowledged that a customer's membership has been affirmatively cancelled, Defendant will continue to automatically bill the customer each month after cancellation.

62.    As further described below, Plaintiff affirmatively cancelled his membership at Defendant's physical car wash location, yet he was still charged a membership fee without his authorization.

63.    Defendant's scheme and practice is uniform across its car wash locations. This deceptive scheme violates the California ARL, EFTA, and California consumer protection laws.

## IV.    Consumers Complain About GO's Deceptive Recurring Charges, Difficulty Cancelling, and Billing Practices

64.    Defendant is well aware that its billing practices deceive consumers. Dozens of Go Car Wash customers have complained of Defendant's unclear billing practices and confusing and difficult cancellation policy and practices. Below is a sampling of the complaints and reviews from consumers on the Better Business Bureau ("BBB") Website:

**Initial Complaint**                          **Complaint Type:** Billing Issues
06/28/2024                                     **Status:** Unanswered ❓

This is an automatic car wash. I drove my car through and used my debit card one time in December. I ordered the cheapest wash on November 29, 2023. The price was $9.99. I NEVER USED THEIR SERVICE AGAIN. My car is an old 2003 Saturn Ion. I only wash it on rare occasions. I found out today that this company has been fraudulently charging my debit card in the amount of $35.99 every month for 7 months. I had to cancel my debit card.

COMPLAINT FOR DAMAGES



**Initial Complaint**
04/10/2024

**Complaint Type:** Customer Service Issues
**Status:** Unanswered

I HAVE BEEN TRYING TO CANCEL FOR A YEAR, AT $32.00 A MONTH! EVERY SINGLE TIME I CALL, I LEAVE A MESSAGE AND DO NOT RECEIVE A CALL BACK THE SAME DAY. ONCE IN A WHILE, I WILL GET A CALL BACK AT AN ODD TIME THAT I CANNOT ANSWER BECAUSE I AM WORKING. THEY SHOULD CALL BACK THE SAME DAY, OR MAYBE GET CALL WAITING AND ANSWER CALLS. BUT I KEEP CALLING TO CANCEL, AND THIS IS NOT SOMETHING THEY HAVE TRIED TO RESOLVE. I TRIED TO CANCEL ONLINE, AND THE **** SAYS IT DOES NOT RECOGNIZE MY LICENSE PLATE NUMBER, WHICH DOES NOT MAKE SENSE NOR ALLOW ME TO ACTUALLY CANCEL. BUT THEY HAVE NO PROBLEM CHARGING ME. I WANT A REFUND FOR THE LAST YEAR I HAVE NOT USED THE SERVICE AND HAVE TRIED TO CANCEL, AND CANCEL ALL FURTHER INTERACTIONS WITH MY CREDIT CARD.



**Initial Complaint**
05/20/2024

**Complaint Type:** Product Issues
**Status:** Resolved

Website does not allow you to update your credit card information. It has a section for this but does not process the debt card update for year and code. I went to the car wash on ************* in ***********, Tx and an attendant said they could manually update and were aware of the website issue. Attendant informed me that they will update my plan but will have to downgrade from Go Big Plan to lower-level Premium plan. I said my account was in good standing, no notice of price increase and was told that if I kept my original account online in good standing then I keep the Go Big plan. Attendant told me to contact customer service. I told the attendant that no one ever answers this line or calls you back and the attendant said he was aware but could do nothing else. I tried to leave a message on the corporate customer service line, but the system hangs up on you after a few seconds. No one ever answers this line. When I requested a cancelation on-line the system offered me 6 months of my current plan at less than I am paying now but will not let you update card information. I had a similar issue a year prior when I was charged twice, and the company did not want to refund me for their error. This company is practicing fraudulent and misleading business practices.

**Initial Complaint**
08/29/2024

**Complaint Type:** Billing Issues
**Status:** Resolved

I have been charged 2 times a month for over 1 year dating July 2023. 1 is for my vehicle and the other is for an unknown license plate number. I have reached out to customer service but they never have anyone answer nor have any body reached back to me since I have left several voice mails. On 8/26/24 I went in person to the ****** location and spoke with the manager ******** but even he couldn't get anybody to help us out. I just want my full refund and to let them know this is really bad customer service and especially since I have been a customer since it first open and went under different management and change of owner.

COMPLAINT FOR DAMAGES

1

2

3



**Initial Complaint**
08/10/2023

**Complaint Type:** Service or Repair Issues
**Status:** Resolved ?

4

5

6

7

GO Carwash recently opened and offered a special price for their grand opening. $9.99 a month for 2 months, for unlimited washes. But when you try to cancel on their website through the update membership link, it tells you the information entered in incorrect, and no account can be found. So if you call the phone number, no one answers, and they ask you to leave a message and don't call you back. 1-833-GOWASH1. I have not stopped to cancel at the location yet, but why have the link and phone number if they don't work.

8

9

**Initial Complaint**
05/16/2023

**Complaint Type:** Billing Issues
**Status:** Unanswered ?

10

11

12

I cancelled my contract in Oct 2022 and still getting charged. **** and told them and they told me it was my fault for not checking my statements. They will see tomorrow if they can maybe return some of the $ back because they dont normally do that and they are basically doing me a favor

13

**Initial Complaint**
03/26/2024

**Complaint Type:** Billing Issues
**Status:** Unanswered ?

14

15

16

17

18

19

20

21

22

On January 3, 2024, I was shocked when Go Car Wash billed me $29.00 on my **** card. On 1/4/2024, I went to the ***************, **************, ** store right away and complained about the charge because I used to pay $9.99 promotion and all of a sudden $29.00. So I told to the manager that to remove the charge or credited back to my **** card because it's very expensive and I can't afford the $29.00 but he said he can't do it because it's the corporate office only who can adjust the charge so he gave me the corporate office phone number. I called the ************** and ************** many times left many messages to call me back but no responses from the customer service and I can't get a live person because always telling me "Because of a high volume of calls, please leave a message" so I did. Almost every single day I've been calling this numbers but up to this date, almost 3 months already but I never got a response from the customer service representatives. I'm very frustrated about your customer service. So I went back again to the store and he told me to file a complaint on the Go Carwash.com website. Honestly, I don't have any complaints on the employees and their services of the store but with the customer service, it's very disgusting and frustrating. I'm looking forward that my $29.00 that I never used be refunded or credited back to my **** card.Thank you and hopefully, the upper management can see message and resolve my problem.******************************* ************

23

24

25

**Initial Complaint**
03/14/2024

**Complaint Type:** Product Issues
**Status:** Resolved ?

26

27

28

Cancelled my membership on Feb. 19 after I saw I was charged *****, never used car wash since December. They had an introductory unlimited price of ***** and no big they got me in Feb. Check my bank account and was charged Mar. 11 for membership. Haven't been there since December and cancelled in Feb. Deceptive billing practices. I need a refund for March. Wrong.

COMPLAINT FOR DAMAGES

**Initial Complaint**
01/27/2023

**Complaint Type:** Billing Issues
**Status:** Unanswered ❓

1/27/23,After using they're service 8 months ago for a couple of months and then canceling services, I wake this morning to a monthly fraudulent charge on my bank account. I want them to return my funds and cease from trying to charge my bank account from no services rendered. This is shady practices that they do and have heard other stories of same thing. ******************

**Initial Complaint**
10/24/2022

**Complaint Type:** Billing Issues
**Status:** Unanswered ❓

Like many others my card is still being attempted to be debited for a membership I've already canceled. I've tried calling. Leaving voice-mails. Going in person. And no resolution. Their customer service is a scam and I can prove it. They don't have anyone who actually answers the phones I've tried calling at all times of the day. It won't allow you to cancel online. And when you try to contact them through their "contact us" tab on their web page and open a "ticket"... every "ticket" has the exact same ticket number. They're not even trying to hide how little they care. At this point they're just stealing my money.

65.    These reviews are merely a sampling of the negative comments consumers have left about Defendant's deceptive billing and cancellation policies and practices.

66.    The same kind of deception that Plaintiff faced is described by other customers in their online reviews.

**V.    Plaintiff's Experience**

67.    Plaintiff signed up for a car wash membership at GO Car Wash's physical location in San Bernardino, California in 2023.

68.    At the time of signup Defendant disclosed that the membership price was $9.99.

69.    At the time of signup, Defendant did not clearly and conspicuously disclose to Plaintiff that its membership would automatically renew until cancelled. Defendant also failed to disclose clearly and conspicuously how to cancel the membership.

70.    Further, Defendant did not provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy,

and information regarding how to cancel in a manner that is capable of being retained by Plaintiff.

71.    Upon information and belief, Defendant actually enrolled Plaintiff an automatically renewing membership for $34.99, that began charging Plaintiff at that price after a discount period.

72.    Defendant never disclosed that the $9.99 price was a discount price, and instead informed Plaintiff that the $9.99 was the price of the membership.

73.    Plaintiff was originally charged $9.99 for his car wash membership.

74.    Plaintiff was subsequently charged $34.99, after Defendant's discount period expired.

75.    Defendant did not clearly and conspicuously disclose that Plaintiff would be charged a higher monthly price after the discount period ended as required by the ARL. In fact, Defendant did not even inform Plaintiff that the $9.99 price was a discount price.

76.    Further, Defendant did not send a notification email to Plaintiff during the purported discount trial period that properly notified Plaintiff of the pending autorenewal or that properly disclosed how to cancel using a cost-effective, timely, and easy to use mechanism.

77.    In September 2023, Plaintiff noticed the charges on his account and affirmatively cancelled his membership in person at the Defendant's physical location in San Bernardino, California.

78.    Defendant was assured by Defendant's employee that his membership was cancelled.

79.    However, Plaintiff was subsequently charged $34.99 again on September 29, 2023.

80.    Plaintiff eventually had to place a stop-payment order with his financial institution to stop the automatic withdrawals wrongfully taken by Defendant.

81.   Had Plaintiff known he was being enrolled in an automatic renewal service he would not have purchased a membership.

82.   Had Plaintiff been told that his membership would increase in price he would not have purchased a membership.

83.   Had Plaintiff received proper notice under the California ARL that the price of his membership would increase after a discount period, he would have cancelled his membership before the end of the discount period.

84.   Had Plaintiff known that it would be impossible to cancel his membership, he would not have purchased a car wash membership.

85.   Therefore, Plaintiff suffered an injury in fact and lost money as a result of Defendant's false, misleading, and unfair practices, as described herein.

## VI.   Defendant Violates the California ARL

86.   Defendant violates the California ARL in five ways: (1) by failing to disclose clearly and conspicuously at the time of purchase that the membership will automatically renew; (2) by failing to disclose clearly and conspicuously at the time of purchase the description of the cancellation procedure that applies to the policy; (3) by failing to clearly and conspicuously disclose that the price given to customers is a discounted price and that the membership will automatically renew at a higher price after the discount period has expired; (4) by failing to obtain the affirmative consent of the customer prior to enrollment in the membership; and (5) by failing to provide an acknowledgment that contained the automatic renewal terms, cancellation policy, and information regarding how to cancel before the consumer paid for the goods. *See* Cal. Bus. & Prof. Code § 17601-17602.

### A.   Defendant Violates California's ARL by Failing to Present its Automatic Renewal Membership Terms in a Clear and Conspicuous Manner

87.   California's ARL makes it illegal for companies to charge consumers for automatically renewing memberships or services unless the company meets strict

disclosure requirements The ARL makes it unlawful for any business making an automatic renewal offer to consumers in California to "[f]ail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity. . . to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1).

88.  The ARL defines "automatic renewal offer terms" to mean:

(1)  That the subscription or purchasing agreement will continue until the consumer cancels;

(2)  The description of the cancellation policy that applies to the offer;

(3)  The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known;

(4)  The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer;

(5)  The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code § 17601(b)(1)-(5).

89.  Additionally, the ARL defines "clear and conspicuous" to mean "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

90.  Defendant does not present the requisite, material automatic renewal terms to its subscribers prior to their enrollment in a manner compliant with the ARL.

91.     As described above, there is no disclosure and/or the disclosure is not clearly and conspicuously made at Defendant's car washes that the membership will automatically renew until cancelled, in violation of 17601 & 17602.

92.     As described above, the disclosure violates 17601(b)(1) & (4) because it does not clearly and conspicuously state that the automatic renewal will continue until cancelled or the length of time or that the service is continuous.

93.     Further there is no clear and conspicuous disclosure that the membership will automatically renew unless cancelled on Defendant's website at the time a user purchases a car wash membership online.

94.     Therefore, Defendant has violated California's ARL by failing to provide the automatic renewal offer terms in a clear and conspicuous manner.

**B.     Defendant Has Violated California's ARL by Failing to Clearly and Conspicuously Disclose its Cancellation Procedure At the Time of Enrollment**

95.     Defendant violated California's ARL by failing to present "the automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity. . . to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1).

96.     Specifically, Defendant violated 17601(b)(2) by failing to include "the description of the cancellation policy that applies to the offer."

97.     As described above, Defendant does not include a description of its cancellation policy that is clear and conspicuous at the time customers purchase a car wash or membership.

98.     Additionally, there is no sufficient clear and conspicuous disclosure on Defendant's website at the time a user checks out.  Defendant merely states in the first of four pages during the checkout process that a user can "[c]ancel online or at the wash any time."

99.    However, even this cancellation description is not accurate, as evidenced by Plaintiff and other consumers who affirmatively cancelled "at the wash" but were continually charged monthly membership fees after they cancelled.

100.    Therefore, Defendant has violated California's ARL by failing to provide a description of the cancellation policy that applies to the offer in a clear and conspicuous manner.

## C.    Defendant Violated California's ARL by Failing to Obtain Affirmative Consent from Users Prior to Enrollment

101.    California's ARL requires Defendant to obtain affirmative consent to the agreement containing the automatic renewal offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time, prior to charging the consumer's banking institution, credit card or debit card. Cal. Bus. & Prof. Code § 17602(a)(2).

102.    Defendant fails to obtain affirmative consent from consumers prior to charging them as Defendant does not clearly outline the renewal offer terms, as described above. Additionally, Defendant does not clarify to consumers that they are enrolling in an automatically renewing membership at the time they sign up. Nor does Defendant disclose to customers that they are enrolling at a discount price and that they will be charged a higher price once the discount period ends.

103.    Nowhere does the customer affirmatively agree to an automatic renewal membership either in person or on Defendant's website.

104.    Therefore, as consumers are not made aware of the automatically recurring nature of the membership, nor presented with the relevant automatic renewal offer terms, Defendant has violated California's ARL by failing to obtain affirmative consent prior to enrollment. As a result, Plaintiff and other users have suffered injury in fact, as they would not have enrolled had they known they were signing up for an automatically renewing membership.

**D.    Defendant Violated California's ARL by Failing to Provide Consumers an Acknowledgment that Includes the Automatic Renewal Terms, Cancellation Policy, and Information Regarding How to Cancel**

105.    California's ARL requires Defendant to provide customers an acknowledgment that includes "the automatic renewal offer terms or continuous service terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(3).

106.    Further, "[i]f the automatic offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services." *Id.*

107.    Upon information and belief, Defendant fails to provide users with an acknowledgment that properly discloses the automatic renewal offer terms, cancellation policy, and information regarding how to cancel to consumers before the discount period expires.

108.    Therefore, Defendant has violated California's ARL by failing to provide the customer with an acknowledgment that includes the proper disclosures and information.

**VII.    Defendant Violates the Electronic Funds Transfer Act ("EFTA") and Regulation E**

109.    The purpose of the Electronic Funds Transfer Act ("EFTA") is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

110.  "Electronic funds transfer" is defined in Regulation E to mean "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(b).

111.  15 U.S.C. 1693e(a) states:

A preauthorized electronic funds transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

112.  Similarly, the implementing regulation, 12 C.F.R. § 205(10)(b), states:

(b) *Written authorization for preauthorized transfers from consumer's account.* Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

113.  Defendant did not provide a copy of the authorization for preauthorized transfers to Plaintiff or class members at the time of signup.

114.  In multiple instances, Defendant debited bank accounts of Plaintiff and class members on a recurring basis without obtaining a written authorization signed or similarly authenticated by the Plaintiff or class members for preauthorized electronic fund transfers from the accounts of Plaintiff or class members, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

115.  In multiple instances, Defendant debited Plaintiff and class members' bank accounts on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or class members for preauthorized electronic funds transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

116. In multiple instances, Defendant debited Plaintiff and class members' bank accounts on a recurring basis after Plaintiff and class members revoked consent to such debits, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. 205.10(b).

## CLASS ALLEGATIONS

117. Plaintiff brings this action individually and on behalf of all others similarly situated. The proposed classes are defined as:

**The California Class:** All persons residing in California who, during the applicable limitations period, were enrolled in the Defendant's Go Car Wash membership and were charged at least one fee by Defendant ("California Class").

**The Nationwide Class:** All persons in the United States who, within the applicable statute of limitations period, cancelled their Go Car Wash membership, and were subsequently charged by Defendant ("Nationwide Class").

118. The California Class and the Nationwide Class are referred to collectively herein as the "Classes."

119. Excluded from the Classes are Defendant, their subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

120. Plaintiff reserves the right to modify or amend the definition of the proposed Classes if necessary, before this Court determines whether certification is appropriate.

121. This case is properly brought as a class action under Fed. R. Civ. P. 23 and all requirements are met for the reasons set forth in the following paragraphs.

122. *Numerosity*. The members of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to

discovery, the Classes consists of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

123.    *Commonality*. There are numerous questions of law and fact common to the Classes relating to Defendant's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

- Whether Defendant placed an automatically renewing charge on Plaintiff and Class Members' accounts;

- Whether Defendant's automatic renewal offer was clear and conspicuous;

- Whether Defendant's cancellation procedure was clearly and conspicuously disclosed;

- Whether Defendant's provided Plaintiff and the Classes a cost-effective, timely, and easy to use mechanism for cancelling their memberships;

- Whether Defendant received Plaintiff and class members affirmative consent before enrolling them in an automatically renewing membership;

- Whether Defendant unlawfully charged Plaintiff and Class members after they affirmatively cancelled their memberships;

- Whether Defendant's conduct constitutes unfair, unlawful, and/or fraudulent practices prohibited by the laws of California;

- Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;

- Whether Defendant unjustly enriched itself to the detriment of Plaintiff and members of the Classes;

- Whether Defendant violated the Electronic Funds Transfer Act;

- the proper measure of damages; and

- the declaratory and injunctive relief to which the Class is entitled.

124.   *Typicality.* Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

125.   *Adequacy of Representation.* Plaintiff is an adequate representative of the Classes because Plaintiff has sustained damage as a result of Defendant's uniform conduct. In addition:

- Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers;

- There is no hostility of interest between Plaintiff and the unnamed Class members;

- Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

- Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

126.   *Predominance.* The questions of law and fact common to the Classes as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

127.   *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the

claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

128.   All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL")**
**(Cal. Bus. & Prof. Code §§ 17535 & 17600, *et seq.*)**
**(On behalf of Plaintiff and the California Class)**

129.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

130.   During the applicable statute of limitations period, Defendant enrolled consumers, including Plaintiff and Class members, in automatic renewal and/or continuous service membership programs and have (a) failed to present the automatic renewal or continuous service offer terms in a clear and conspicuous manner before the membership agreement is fulfilled and in visual proximity to the request for consent to the offer, in violation of § 17602(a)(1); (b) charged the consumer's credit cards, debit cards, or third-party payment accounts for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal or continuous service offer terms, in violation of § 17602(a)(2); (c) failed to provide an

acknowledgement that includes clear and conspicuous disclosure of automatic renewal or continuous service offer terms, the cancellation policy, and information regarding how to cancel, in violation of § 17602(a)(3) and § 17602(b); (d) failed to provide notice as specified in 17602(a)(4), at least 3 days before and at most 21 days before the expiration of the discount or promotional period, if the Plaintiff or Class Member accepted a discount or promotional price at the time of sign up, in violation of Cal. Bus. & Prof. Code § 17602(a)(4) and § 17602(b).

131.    Plaintiff and the California Class have suffered injury in fact and lost money as a result of Defendant's violations alleged herein because they either would not have purchased a car wash or membership from Defendant in the first place, or would have taken other steps to avoid becoming enrolled in and/or charged for Defendant's membership, such that Plaintiff and the Class would not have paid any money to Defendant for the membership.

132.    Pursuant to § 17535, Plaintiff and Class members are entitled to restitution of all amounts that Defendant charged for the car wash membership during the four years preceding the filing of the initial Complaint in this action and continuing until Defendant's statutory violations cease.

133.    Pursuant to § 17535, for the benefit of the general public of the State of California, Plaintiff seeks a public injunction enjoining Defendant from making car wash membership offers to California consumers that do not comply with California law, and from posting charges for membership fees without first complying with California law. Plaintiff reserves the right to seek other prohibitory or mandatory aspects of injunctive relief.

134.    Plaintiff individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgements that will prevent Defendant from continuing with its unlawful acts described herein; restitution that will restore the full amount of their

money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**
**(On behalf of Plaintiff and the California Class)**

135.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

136.    California law applies to the Class because California has a significant interest in regulating the conduct of businesses operating within its borders.

137.    Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

138.    Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

139.    Defendant made unlawful automatic renewal and/or continuous service offers to consumers in California in violation of California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code § 17600, *et seq*., by:

(1)    Failing to provide "clear and conspicuous" disclosures mandated by California law, as required by Cal. Bus. & Prof. Code § 17602(a)(1);

(2)    Charging Plaintiff's and Class Members' credit and debit cards, or account with a third party, for an automatic renewal or continuous service without first obtaining affirmative consent to the agreement containing the automatic renewal offer terms or continuous service terms, as required by Cal. Bus. & Prof. Code § 17602(a)(2);

(3)     Charging Plaintiff's and Class Members' credit and debit cards, or account with a third party, for a higher price than was disclosed at signup without first obtaining affirmative consent to charge a discount price and then a subsequent higher price, as required by Cal. Bus. & Prof. Code § 17602(a)(2);

(4)     Failing to provide an toll-free telephone number, electronic mail address, a postal address, or another cost-effective, timely, and easy-to-use mechanism for cancellation that was described in the acknowledgment, as required by Cal. Bus. & Prof. Code § 17602(c);

(5)     Failing to provide the Plaintiff or Class Members' with a notice as specified in 17602(a)(4), at least 3 days before and at most 21 days before the expiration of the discount or promotional period, if the Plaintiff or class member accepted a discount or promotional price at the time of sign up, in violation of Cal. Bus. & Prof. Code § 17602(b);

(6)     Charging consumer's credit cards, debit cards, or other payment method subsequent to their cancellation of their memberships without users' affirmative consent.

140.    The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

141.    The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

142.   Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous.

143.   Defendant's conduct was and continues to be of no benefit to purchasers of the Product, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Product's advertising. Deceiving consumers into automatic enrollment in Defendant's product is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

144.   Under the UCL, a business act or practice is "unlawful" if it violates any other law or regulation.

145.   As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the California ARL, as described above.

146.   Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

147.   Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product is not an automatically renewing membership. Further, Defendant's conduct is fraudulent because engages in a fraudulent deception and scheme to charge customers memberships even after they have affirmatively cancelled the membership. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

148.   Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and

are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

149.   There were reasonably available alternatives to further Defendant's legitimate business interests other than the misleading and deceptive conduct described herein.

150.   Plaintiff relied on Defendant's misrepresentations in choosing to purchase a car wash or membership.

151.   As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived.

152.   But for Defendant's unlawful, unfair, and fraudulent conduct, Plaintiff and Class members would not have lost the money taken by Defendant's automatic renewal membership scheme. Plaintiff and Class members have suffered injury in fact and have lost money and property as a result of Defendant's conduct.

153.   As a result of its unfair, unlawful, and fraudulent conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class Members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

154.   Accordingly, Plaintiff, individually and on behalf of all others similarly situated, seeks restitution from Defendant of all money obtained from Plaintiff and the Class as a result of Defendant's conduct.

155.   Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

156.   Plaintiff has no adequate remedy at law in part because Defendant's conduct is continuing. Plaintiff therefore seeks an injunction on behalf of the general

public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

## THIRD CAUSE OF ACTION
## VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")
### (Cal. Civ. Code §§ 17200, *et seq*.)
### (On behalf of Plaintiff and the California Class)

157.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

158.   This cause of action is brought pursuant to the Consumer Legal Remedies Act ("CLRA"), California Civil Code section 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code section 1761(d).

159.   Defendant's sale of car washes and memberships to consumers were "transactions" within the meaning of California Civil Code section 1761(e).

160.   Plaintiff and the Class purchased "services" within the meaning of California Civil Code section 1761(b).

161.   Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in and did result in the sale of car wash memberships:

(a)(5) "[Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have […]"

(a)(7) "Representing that goods or services are of a particular standard, quality, or grade…if they are of another."

(a)(9) "Advertising goods or services with intent not to sell them as advertised."

(a)(14) "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."

Cal. Civ. Code § 1770(a)(5), (7), (9), and (14).

162.  Specifically, as alleged herein, Defendant has misrepresented and continue to misrepresent the terms of their memberships.

163.  Defendant has directed and do direct these misrepresentations at consumers before purchase through marketing communications.

164.  At no time does Defendant disclose its true cancellation practices, they repeatedly conceal and misrepresent this material information.

165.  Defendant continues to violate the CLRA and continues to injure the public by misleading consumers about its cancellation policies. Accordingly, Plaintiff seeks injunctive relief on behalf of the general public to prevent Defendant from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed or denied an effective and complete remedy if such an order is not granted.

166.  In accordance with California Civil Code section 1780(a), Plaintiff and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

167.  Plaintiff reserves the right to amend the complaint to seek damages under the CLRA after notice has been provided pursuant to California Civil Code section 1782(a).

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT ("EFTA")**
**15 U.S.C. § 1693,** *et seq.*
**(On behalf of Plaintiff and the Nationwide Class)**

168.  Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

169.  Plaintiff seeks to recover for Defendant's violations of the Electronic Funds Transfer Act on behalf of themselves and the Nationwide Class.

///

///

///

170.    The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system.[6] The "primary objective" of the EFTA "is the provision of individual consumer rights."

171.    Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter," pursuant to § 1693(l).

172.    Defendant's transfers of money from the financial accounts of Plaintiff and Class Members, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205, *et seq.* An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account."[7] The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal."[8]

173.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals."[9] The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of

---

[6] 15 U.S.C. §§ 1693, *et seq.*

[7] *Id.* § 1693(a)(7).

[8] 12 C.F.R. § 205.3(b)(v).

[9] 15 U.S.C. § 1693(a)(9).

COMPLAINT FOR DAMAGES

a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer."[10]

174. Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."[11]

175. Plaintiff and Class Members each maintained an "account" as that term is defined by 15 U.S.C. § 1693(a)(2) and are "consumers" within the meaning of 15 U.S.C. § 1693(a)(5).

176. Defendant uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of Plaintiff and Class Members without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E. Specifically, Defendant took money from Plaintiff's and Class Members' bank accounts without written authorization when Defendant charged Plaintiff's and Class Members' accounts membership fees. Further, Defendant violated the EFTA and Regulation E by taking money from Plaintiff's and Class Members' accounts after Plaintiff and Class Members had expressly cancelled their memberships and revoked any authorization for such transfers.

177. The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as Defendant, "fails to obtain the authorization in writing or fails

---

[10] 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

[11] *Id.* § 205.10(b).

to give a copy to the consumer . . . it is the third-party payee that is in violation of the regulation."[12]

178.    As a direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and Class Members have suffered damages in the amount of the unauthorized debits taken by Defendant.[13] As a further direct and proximate result of Defendant's violations of the EFTA and Regulation E, Plaintiff and Class Members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant."[14]

179.    Pursuant to 15 U.S.C. § 1693(m), Plaintiff and Class Members are also entitled to recover costs of suit and attorneys' fees from Defendant.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Classes)**

180.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

181.    Plaintiff, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's statutory claims. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by statute—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the statutes, then unjust enrichment will require disgorgement of all improperly assessed membership fees.

182.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed membership fees upon Plaintiff and the members of the Classes that are unfair, unconscionable, and oppressive.

---

[12] 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

[13] 15 U.S.C. § 1693(m).

[14] *Id.* § 1693(m)(a)(2)(B).

COMPLAINT FOR DAMAGES

183.  Defendant has unjustly retained a benefit in the form of improper membership fees to the detriment of Plaintiff and the members of the Classes.

184.  Defendant appreciated or had knowledge of the benefits conferred upon them by Plaintiff and Class members.

185.  As a result of Defendant's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the monies paid to Defendant through its membership.

186.  Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and Class Members because Defendant has obtained that money through misrepresentations and omissions.

187.  Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received through its automatically renewing membership.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes, respectfully request that the Court:

a.  Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

b.  Declaring that Defendant's conduct violates the statutes set forth above;

c.  Award Plaintiff and the Classes actual damages in amount according to proof;

d.  Award Plaintiff and the Classes restitution in an amount to be proven at trial;

e.  Award Plaintiff and the Classes pre-judgment interest in the amount permitted by law;

f.  Award Plaintiff and their attorneys fees and costs as permitted by law;

g.  Declare Defendant's practices outlined herein to be unlawful;

h.  Enjoin Defendant from engaging in the practices outlined herein;

COMPLAINT FOR DAMAGES

i.      Grant Plaintiff and the Classes a trial by jury;

j.      Grant leave to amend these pleadings to conform to evidence produced at trial; and

k.      Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, FAL, CLRA, and EFTA.

## **JURY DEMAND**

Plaintiff, by counsel, demand trial by jury.

Dated: September 28, 2024        Respectfully submitted,

**KALIELGOLD PLLC**

*/s/ Sophia G. Gold*
Sophia G. Gold
Jeffrey D. Kaliel
Amanda J. Rosenberg
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

**JENNINGS PLLC**
Christopher D. Jennings*
Tyler B. Ewigleben*
Winston S. Hudson*
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (601) 270-0197
chris@jenningspllc.com
tyler@jenningspllc.com
winston@jenningspllc.com

* *Pro Hac Vice* applications to be submitted

*Counsel for Plaintiff and the Proposed Class*

COMPLAINT FOR DAMAGES